UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

JOHN DIXON,                                    :

                      Petitioner,          :          **MEMORANDUM DECISION**

                - v -                    :          20-cv-2389 (DC)

SUPERINTENDENT OF                              :
EASTERN CORRECTIONAL FACILITY,

                           :

                    Respondent.          :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

APPEARANCES:          JOHN DIXON
                        Petitioner *Pro Se*
                        DIN 12A0504
                        Wallkill Correctional Facility
                        Route 208, Box G
                        Wallkill, New York 12589

                        MELINDA KATZ, Esq.
                        District Attorney, Queens County
                        By:    Johnnette Traill, Esq.
                                Ellen C. Abbot, Esq.
                                Assistant District Attorneys
                        125-01 Queens Boulevard
                        Kew Gardens, New York 11415
                                Attorney for Respondent

CHIN, Circuit Judge:

        On January 20, 2012, following a jury trial, petitioner John Dixon was

convicted in the Supreme Court of New York, Queens County (Griffin, *J.*), of rape in the

first degree in violation of N.Y. Penal Law § 130.35(1), assault in the second degree in

violation of N.Y. Penal Law § 120.05(6), and sexual abuse in the first degree in violation of N.Y. Penal Law § 130.65(1).  *See* Dkt. 75-12 at 49.  The trial court sentenced Dixon to twenty years' imprisonment followed by fifteen years of post-release supervision on the first-degree rape count and five years' imprisonment followed by five years of post-release supervision on each of the second-degree assault and first-degree sexual abuse counts.  Dkt. 68 at 7.  The court ordered the sentences to run concurrently.  *Id.*

The Appellate Division, Second Department affirmed Dixon's convictions. *People v. Dixon*, 138 A.D.3d 1016 (2d Dep't 2016) ("*Dixon I*").  On June 23, 2016, the New York Court of Appeals denied his application for leave to appeal.  *People v. Dixon*, 27 N.Y.3d 1131 (2016) (Pigott, J.) ("*Dixon II*").  Dixon then filed for a motion for reconsideration, which the Court of Appeals denied on October 4, 2016.  *See People v. Dixon*, 28 N.Y.3d 1027 (2016) (Pigott, J.) ("*Dixon III*").  In 2017, the Supreme Court denied Dixon's petition for a writ of certiorari.  *See Dixon v. New York*, 581 U.S. 906 (2017) (denying petition); *see also Dixon v. New York*, 581 U.S. 1014 (2017) (denying petition for rehearing).  Dixon also attacked his convictions in several post-trial and collateral motions, all of which were denied.

On May 26, 2020, Dixon filed a *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 (the "Petition") in this Court.  Dkt. 1.  Dixon seeks habeas relief on four grounds: (1) prosecutorial misconduct; (2) legal insufficiency of evidence;

(3) ineffective assistance of counsel; and (4) the trial court's conduct and rulings.  *See id.*

at 4-6.  On March 15, 2024, the case was reassigned to the undersigned.

For the reasons that follow, the Petition is DENIED.

## STATEMENT OF THE CASE

**I.    The Facts[1]**

The evidence at trial established the following:

On November 28, 2009, around 5:30 a.m., C.R. -- then 19 -- waited at the

Parsons Boulevard and Union Turnpike bus stop to commute to her job as a sales

associate at Macy's in Manhasset, Long Island.  Dixon approached the bus stop in a red

1999 Ford Explorer and offered C.R. a ride.  C.R. declined Dixon's offer three times.  She

finally accepted, however, because she was worried about being late for work.  Dkt. 75-

12 at 53.

Once she was in the vehicle, C.R. told Dixon that she needed to go to Main

Street and Dixon told her that he was going in that direction.  Dixon offered C.R.

money, which she declined.  Dixon drove only a short distance before stopping.  The

---

[1]      The facts are primarily drawn from Respondent's brief submitted in opposition to
Dixon's direct appeal in the Appellate Division in 2015.  *See* Dkt. 75-12 at 46-64; Dkt. 75-13 at 1-
42.  It is not necessary to give a more detailed recitation of the facts -- many of which are graphic
-- to resolve Dixon's habeas corpus petition.  Respondent's brief to the Appellate Division
contains more detailed recitations of the facts with extensive citations to the trial record.  *See,*
*e.g.*, Dkt. 75-12 at 53.

doors were locked.  When C.R. tried to unlock the door, Dixon used the crook of his

right arm to grab C.R.'s neck and started to choke her.  *Id.*

C.R. tried to free herself from his grip and begged Dixon to let her go.

Dixon responded by saying, "I am not going to kill you; I just want to fuck you."  At that

point, C.R. was in Dixon's lap -- he had dragged her there while choking her.  Dixon

then released C.R.'s neck and pushed C.R. back into her seat, where he took off her

clothes and pulled down his pants.  C.R.'s neck was bleeding and bruised.  Dixon then

climbed on top of C.R. and penetrated her vagina with his penis.  *Id.* at 53-54; *see also*

Dkt. 75-22 at 98-105 (C.R.'s trial testimony).

Dixon then drove C.R. to Main Street, placed money in her purse, offered

her some DVDs, forced her to put his name and phone number in her phone, and told

her to call him.  C.R. exited the vehicle after Dixon unlocked the doors.  As he drove

away, C.R. observed his license plate number and typed it into her phone.  Dkt. 75-12 at

54; Dkt. 75-22 at 108-10 (C.R.'s testimony).

C.R. then went to the nearest police station: the 109th Precinct.  Police

Officer Joan Miller, who was near the front desk, noticed C.R.'s distraught appearance

and visible neck injuries.  C.R. told Officer Miller that she had been raped, and an

ambulance then took C.R. to the hospital.  There, Rasheed Davis, an emergency medical

physician's assistant and forensic examiner for sexual assaults, met with C.R.  She had

visible scratch marks on her neck and back, petechia (ruptured capillaries in the eye),

4

and hemorrhaging in her right eye.  An ophthalmologist confirmed that C.R. suffered

from subconjunctival injuries.  Altogether, these injuries were consistent with "a

strangulation pattern."  Dkt. 75-12 at 54-55.  Moreover, teeth marks and swelling and

bruising on C.R.'s tongue indicated that she bit her tongue while struggling against

being choked.  *Id.* at 56.

      After conducting a thorough exam, Davis found that C.R.'s injuries on the

posterior area of her vagina were consistent with forced vaginal penetration.  As part of

the exam, Davis also collected bodily fluid and semen found inside C.R.'s vagina for

testing.  *Id.* at 56.

      C.R. then met with Detective Kenneth Lent and described her attacker as a

black man in his late thirties or forties who drove a red vehicle and wore a cap.  C.R.

informed Detective Lent that one of her earrings was missing; the earring in her

possession had "USA" stamped twice on its backing.  C.R. also told Detective Lent that

Dixon offered her one hundred dollars in cash, which she refused, and asked her not to

report the incident to the police.  According to C.R., Dixon put the money into her purse

anyway, but she could not find this money.  *Id.* at 57.

      C.R. provided Detective Lent with the red vehicle's license plate number --

which she had written down in her phone -- and the name and phone number that

Dixon had given her.  *Id.*  With this information, Detective Lent ran a computer check

that confirmed that Dixon owned the red vehicle.  After police officers located the

vehicle, C.R. confirmed its identity.  On November 28, 2009, Detective Lent approached Dixon, who was in his red Ford Explorer, and told Dixon that there was an investigation involving his vehicle.  He asked Dixon to come to the precinct, where Dixon later provided an oral swab for DNA analysis.  *Id.* at 58.

Testing confirmed that Dixon's DNA matched the DNA from the semen taken from C.R.'s vagina.  *Id.*  Officer Bruce Kapp photographed and searched Dixon's vehicle after obtaining a warrant.  There, he found a single earring backing with "USA" stamped twice on it. *Id*. at 59. On November 29, 2009, C.R. identified Dixon as her assailant from a lineup based on his voice and clothing.  *Id.*

## II.        *The State Court Proceedings*

### a.        *The Indictment and Pre-Trial Proceedings*

Dixon was arrested and charged with first-degree rape, second-degree assault, and first-degree sexual abuse.  Dkt. 68 at 5; 75-12 at 9.  He was indicted on April 19, 2010.  Dkt. 75-12 at 25.

### b.        *The Trial*

Trial began on March 28, 2011.  Dkt. 75-20 at 26.  The jury heard testimony from the People's witnesses: Detective Bruce Kapp, Dkt. 75-22 at 62-87; C.R., *id.* at 88-155, Dkt. 75-23 at 1-31; Katherine Heinowitz, a human resources manager at Macy's, Dkt. 75-23 at 37-47; Detective Kenneth Lent, *id.* at 47-98; Police Officer Joan Miller, *id.* at 99-107; Rasheed Davis, the emergency medical physician's assistant and forensic

examiner at Queens Hospital Center, *id.* at 111-48, Dkt. 75-24 at 1-12; Detective Kevin

Correa, Dkt. 75-24 at 12-17; and Daniel Renstrom, who tests blood, semen, and saliva

evidence and conducts DNA analysis for the Office of the Chief Medical Examiner in

New York. *Id.* at 17-46. After the People rested, the defense moved to dismiss on all

counts, and the trial court denied the motion. Dkt. 75-24 at 46-47.

> The defense presented a case and called Dixon as the sole witness. *Id.* at

47-117. Dixon testified that, on November 28, 2009, he was drinking and smoking

"coolies" (cocaine powder mixed into cigarettes) at a bar in Corona, Queens until nearly

3 a.m. While driving on Parsons Boulevard, he saw C.R. stooped down as if she were

speaking to someone in a stopped car. C.R. looked at Dixon's vehicle, made a "hand

gesture," and later nodded in Dixon's direction. Accordingly, Dixon turned around and

stopped in front of C.R. Dixon asked C.R. "if she was out there trying to make money,"

and C.R. responded affirmatively. Dixon told C.R. he had money. C.R. informed Dixon

that she had to be somewhere, and Dixon said he would take her there "afterwards."

Dkt. 75-12 at 59-60. Dixon testified that he thought C.R. was trying to make money

"[s]exually" -- *i.e.*, via prostitution. *See* Dkt. 75-24 at 61.

> Dixon then testified that, after C.R. entered his vehicle, he drove for a

short while to a mini mall, and C.R. requested $100. After he gave her money -- which

C.R. placed in her purse -- they had sex. Dixon then gave C.R. $10 to buy water and

candy, drove her to Main Street, gave C.R. his phone number and some DVDs, and suggested that they meet up again.  Dkt. 75-12 at 60-61.

After resting, the defense renewed its motion to dismiss, which the trial court again denied.  Dkt. 75-24 at 118.  The People did not present a rebuttal case, and summations took place on April 5, 2011.  *Id.* at 128, 138-58; Dkt. 75-25 at 1-43.  That same day, the jury found Dixon guilty of first-degree rape, second-degree assault, and first-degree sexual abuse.  Dkt. 72-25 at 64-65.

### c.    *The Sentencing Hearing*

On January 20, 2012, the trial court sentenced Dixon to twenty years' imprisonment followed by fifteen years of post-release supervision on the first-degree rape count and five years' imprisonment followed by five years of post-release supervision on each of the second-degree assault and first-degree sexual abuse counts. Dkt. 75-25. at 70, 79.  The court ordered all sentences to run concurrently.  *Id.*

### d.    *Direct Appeal*

On April 10, 2014, Dixon, represented by counsel, appealed his conviction to the Appellate Division, Second Department.  On February 26, 2015, Dixon filed a supplemental *pro se* brief in the Appellate Division.  He asserted the following claims in the counseled and *pro se* briefs: (1) the trial court incorrectly permitted Davis to testify that C.R.'s injuries were consistent with being choked and forcible sex, which bolstered C.R.'s testimony; (2) the evidence was legally insufficient; (3) the prosecutor's

8

misconduct deprived him of a fair trial; (4) he received ineffective assistance of counsel; and (5) the court's conduct and rulings deprived him of a fair trial.  *See* Dkt. 68 at 20-21.

On April 20, 2016, the Appellate Division affirmed Dixon's judgment of conviction.  *See Dixon I*, 138 A.D.3d at 1017.  The Appellate Division concluded that: (1) Dixon's argument that Davis improperly bolstered C.R.'s testimony was unpreserved for appellate review; (2) his contention that the evidence was legally insufficient was also unpreserved; (3) his prosecutorial misconduct claim was not reviewable on direct appeal because of the "insufficient evidence" in the record; (4) his ineffective assistance of counsel claim was a "mixed claim" because it involved facts both inside and outside of the record and, based on the record, it was "not evident" that he was deprived of effective assistance of counsel; and (5) finally, his claim about the court's conduct was unpreserved.  *Id.* at 1016-17.

On June 23, 2016, the New York Court of Appeals denied leave to appeal, *Dixon II*, 27 N.Y.3d at 1131, and on October 4, 2016, denied Dixon's motion for reconsideration.  *See Dixon III*, 28 N.Y.3d at 1027.

Dixon then sought to appeal to the United States Supreme Court.  On April 3, 2017, the Supreme Court denied his petition for a writ of certiorari, *see Dixon*, 581 U.S. at 906, and on May 30, 2017, denied his petition for rehearing, *see Dixon*, 581 U.S. at 1014.

9

### e. Motions for Post-Trial and Collateral Relief

Dixon filed numerous motions for post-trial and collateral relief, all of which were denied.  He filed some of the collateral motions while his direct appeal was pending.  I summarize Dixon's post-trial and collateral motions here.

On September 6, 2011, Dixon, represented by counsel, moved to set aside the verdict under New York Criminal Procedure Law ("CPL") § 330.30 for ineffective assistance of counsel.  Dkt. 68 at 6; Dkt. 75-10 at 73.  On January 19, 2012, the trial court denied the motion.  Dkt. 75-10 at 73.

On July 15, 2014, Dixon moved *pro se* to vacate the judgment under CPL § 440.10 on several grounds, including prosecutorial misconduct and ineffective assistance of counsel.  On December 8, 2014, the trial court denied the motion.  *See* Dkt. 68 at 7-14 (summarizing the trial court's decision); Dkt. 75-5 at 37-54 (decision).  The trial court concluded that, "[t]o a large extent, [the] claims upon which [Dixon] bases this CPL 440 motion are incoherent.  As for the claims that this Court can discern, the claims are not cognizable under CPL 440.10."  Dkt. 75-5 at 45.  On September 4, 2015, the trial court denied Dixon's motion to renew his motion to vacate.  Dkt. 68 at 15-20 (detailing the decision).  On January 12, 2016, the Appellate Division denied Dixon's application for leave to appeal.  On June 16, 2016, the Appellate Division denied Dixon's application for reconsideration.  *Id.* at 20.

10

On April 6, 2016, Dixon, proceeding *pro se*, requested a hearing regarding the grand jury minutes or to vacate the judgment and dismiss the indictment.  On July 6, 2016, the trial court denied his motion.  The Appellate Division denied Dixon's motion for an extension to apply for leave to appeal.  *See* Dkt. 68 at 23-24.

On August 28, 2017, Dixon moved *pro se* for a writ of error *coram nobis* in the Appellate Division to vacate that court's decision affirming his conviction, based on ineffective assistance of appellate counsel.  On February 7, 2018, the Appellate Division denied his motion.  *People v. Dixon*, 158 A.D.3d 639 (2d Dep't 2018).  On May 7, 2018, the Court of Appeals denied Dixon's application for leave to appeal.  *People v. Dixon*, 31 N.Y.3d 1080 (2018) (Stein, *J.*).

On June 6, 2018, Dixon, proceeding *pro se*, applied for a state writ of habeas corpus in Ulster County, New York.  Dkt. 68 at 24.  On September 19, 2018, the court denied the writ and dismissed Dixon's petition.  *Id.* at 25.  On March 16, 2020, the Appellate Division affirmed the dismissal.  *People ex rel. Dixon v. Superintendent of E. Corr. Facility*, 181 A.D.3d 1107 (3d Dep't 2020).

III.   *The Petition*

In the Petition, Dixon seeks habeas relief on four grounds: (1) prosecutorial misconduct; (2) legal insufficiency of evidence; (3) ineffective assistance of counsel; and (4) the trial court's conduct and rulings.  *See* Dkt. 1 at 4-6.

On September 23, 2020, Respondent moved to dismiss the Petition as time-barred.  *See* Dkt. 14.  On August 26, 2021, the Court (Kovner, *J.*) denied the motion without prejudice to renewal and directed the People to file the state court record.

On September 14, 2021, the People again moved to dismiss the Petition as time-barred, Dkt. 34, Dixon opposed on January 25, 2022, Dkt. 48, and the People replied on April 1, 2022, Dkt. 54.  The Court took the motion to dismiss under advisement and, on August 4, 2022, ordered the People to respond to the Petition.

On January 4, 2023, the People opposed the Petition, Dkt. 68, and on December 12, 2023, Dixon replied, Dkt. 82.

During the proceedings in this Court, Dixon repeatedly requested discovery.  *See, e.g.,* Dkts. 5, 6, 7.  The Court denied these motions without prejudice because "a petitioner is entitled to discovery only 'for good cause shown'" and Dixon failed to make that showing.  *See* Dkt. Order Dated 3/31/2021; *see also* Dkt. Order Dated 8/25/2022 (same); Dkt. Order Dated 2/06/2023 (same).

The case was reassigned to the undersigned on March 15, 2024.  As discussed below, I conclude that Dixon's claims fail on the merits.  Accordingly, I do not reach the question of the timeliness of the Petition.

*DISCUSSION*

I.    *Federal Review of State Convictions*

A federal court may not grant a habeas petition on a claim that was

adjudicated on the merits in state court unless that adjudication:

> (1) resulted in a decision that was contrary to, or involved an
> unreasonable application of, clearly established Federal law, as
> determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable
> determination of the facts in light of the evidence presented in the
> State court proceeding.

28 U.S.C. § 2254(d); *see Harrington v. Richter*, 562 U.S. 86, 97-98 (2011); *Waiters v. Lee*, 857

F.3d 466, 477 (2d Cir. 2017).  Hence, when a claim is adjudicated on the merits, the state

court's decision must be accorded "substantial deference."  *Fischer v. Smith*, 780 F.3d 556,

560 (2d Cir. 2015) (citing *Dolphy v. Mantello*, 552 F.3d 236, 238 (2d Cir. 2009)).  "A federal

court may reverse a state court ruling only where it was 'so lacking in justification that

there was . . . [no] possibility for fairminded disagreement.'"  *Vega v. Walsh*, 669 F.3d 123,

126 (2d Cir. 2012) (per curiam) (quoting *Harrington*, 562 U.S. at 103); *see also Wetzel v.

Lambert*, 565 U.S. 520, 524 (2012) (per curiam) (quoting *Harrington*, 562 U.S. at 102).

A federal court cannot review a habeas petition unless the petitioner "has

exhausted the remedies available" in state courts.  28 U.S.C. § 2254(b)(1)(A).  This

requirement affords state courts the "opportunity to pass upon and correct alleged

violations of its prisoners' federal rights."  *Jackson v. Edwards*, 404 F.3d 612, 619 (2d Cir.

2005) (quoting *Picard v. Connor*, 404 U.S. 270, 275 (1971)).  "This requires that the prisoner 'fairly present' his constitutional claim to the state courts, which he accomplishes 'by presenting the essential factual and legal premises of his federal constitutional claim to the highest state court capable of reviewing it.'"  *Jackson v. Conway*, 763 F.3d 115, 133 (2d Cir. 2014) (quoting *Rosa v. McCray*, 396 F.3d 210, 217 (2d Cir. 2005)).  But if a petitioner's unexhausted claim is "plainly meritless, the court may deny the claim on the merits notwithstanding the petitioner's failure to exhaust."  *Ortiz v. Heath*, No. 10-cv-1492 (KAM), 2011 WL 1331509 at *14 (E.D.N.Y. April 6, 2011) (citing 28 U.S.C. § 2254(b)(2)); *Rhines v. Weber*, 544 U.S. 269, 277 (2005)).

Moreover, "federal courts will not review questions of federal law presented in a habeas petition when the state court's decision rests upon a state-law ground that 'is independent of the federal question and adequate to support the judgment.'"  *Cone v. Bell*, 556 U.S. 449, 465 (2009) (quoting *Coleman v. Thompson*, 501 U.S. 722, 729 (1991)).  In other words, if the state court refused to consider an argument because it was procedurally barred under state law, the argument is barred from federal habeas review so long as the procedural bar is "adequate to support the judgment."  *Murden v. Artuz*, 497 F.3d 178, 191-92 (2d Cir. 2007) (quoting *Jimenez v. Walker*, 458 F.3d 130, 138 (2d Cir. 2006)).  A petitioner's failure to comply with a state procedural rule qualifies as such an adequate and independent state ground, provided that (1) the state court actually "relied on the procedural bar as an independent basis for its disposition

14

of the case," *Harris v. Reed*, 489 U.S. 255, 261-62 (1989) (citation omitted), and (2) the state procedural rule is "firmly established and regularly followed," *James v. Kentucky*, 466 U.S. 341, 348 (1984).

The Second Circuit has "held repeatedly that the contemporaneous objection rule" -- that state appellate courts will review only those errors of law that are presented contemporaneously such that the trial court is "reasonably prompted" to correct them -- "is a firmly established and regularly followed New York procedural rule." *Downs v. Lape*, 657 F.3d 97, 103-04 (2d Cir. 2011) (collecting cases). Hence, the Circuit has affirmed the denial of habeas relief based on the Appellate Division's ruling that the failure of a petitioner to object at trial rendered a claim unpreserved for appellate review. *See, e.g., Garcia v. Lewis*, 188 F.3d 71, 81-82 (2d Cir. 1999) (affirming the denial of habeas relief where the petitioner's trial counsel failed to bring to trial court's attention a claim that he later attempted to advance on appeal). If a claim is procedurally barred pursuant to an independent and adequate state rule, a federal habeas court may not review it on the merits, unless the petitioner demonstrates (1) "cause for the default and actual prejudice as a result of the alleged violation of federal law," or (2) "that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman*, 501 U.S. at 750.

15

## II.     Analysis

In the Petition, Dixon seeks habeas relief on four grounds: (1) prosecutorial misconduct; (2) legal insufficiency of evidence; (3) ineffective assistance of counsel; and (4) the trial court's conduct and rulings.  *See* Dkt. 1 at 4-6.  I address each claim in turn.

### a.     Sufficiency of the Evidence

Dixon argues that there was insufficient evidence at trial to support his conviction.  To challenge the sufficiency of the evidence, Dixon points to, among other things, purportedly perjured testimony of two witnesses, misrepresentations made by the lead detective, and "incredible" testimony of several witnesses, including C.R.  *See* Dkt. 1 at 4.  The Appellate Division considered the claim on direct appeal -- raised in Dixon's *pro se* brief -- and concluded that CPL § 470.05(2) procedurally barred this challenge because Dixon failed to preserve it for appellate review.  *Dixon I*, 138 A.D.3d at 1016.  The Appellate Division further ruled, however, that Dixon's claim failed on the merits.  *Id.* at 1016-17 ("[V]iewing the evidence in the light most favorable to the People . . . , we find that it was legally sufficient to establish the defendant's guilt beyond a reasonable doubt.").

Habeas relief is thus not available to Dixon for his sufficiency of the evidence claim.  For an independent and adequate state ground to bar habeas relief, the state court rendering the judgment must "clearly and expressly state that its judgment

16

rests upon a state procedural bar."  *Whitley v. Ercole*, 642 F.3d 278, 286 (2d Cir. 2011)

(quoting *Glenn v. Bartlett*, 98 F.3d 721, 724 (2d Cir. 1996)).  Here, the Appellate Division

clearly and expressly stated that Dixon's sufficiency of the evidence claim was

unpreserved for appellate review.  *Dixon I*, 138 A.D.3d at 1016.

Moreover, Dixon has failed to demonstrate that he is entitled to an

exception to the procedural default rule, because he has not shown either (1) cause and

actual prejudice or (2) that a fundamental miscarriage of justice would occur if the

merits of the federal claim were not considered.  *See Edwards v. Carpenter*, 529 U.S. 446,

451 (2000) (citations omitted); *Coleman*, 501 U.S. at 748; *Carvajal v. Artus*, 633 F.3d 95, 104

(2d Cir. 2011).

Dixon's claim fails on the merits in any event.  "The requirement that guilt

of a criminal charge be established by proof beyond a reasonable doubt dates at least

from our early years as a Nation."  *In re Winship*, 397 U.S. 358, 361 (1970).  In evaluating

a sufficiency-of-the-evidence claim on habeas review, a federal court must review all the

evidence in the light most favorable to the prosecution.  *Jackson v. Virginia*, 443 U.S. 307,

319 (1979).  The court must affirm the verdict if "any rational trier of fact could have

found the essential elements of the charged crime beyond a reasonable doubt."  *United

States v. Rutigliano*, 790 F.3d 389, 400 (2d Cir. 2015) (citing *United States v. Desnoyers*, 637

F.3d 105, 109 (2d Cir. 2011)).  In considering a petition challenging the sufficiency of

evidence to support a state criminal conviction, the court defers to the jury's assessment

of "the weight of the evidence [and] the credibility of witnesses." *Maldonado v. Scully*, 86 F.3d 32, 35 (2d Cir. 1996) (citations omitted).

If the facts support conflicting inferences, the court "must presume -- even if it does not affirmatively appear in the record -- that the trier of fact resolved any such conflicts in favor of the prosecution[] and must defer to that resolution." *Jackson*, 443 U.S. at 326. Thus, a habeas "petitioner bears a very heavy burden in convincing a federal *habeas* court to grant a petition on the grounds of insufficiency of the evidence." *Fama v. Comm'r of Corr. Servs.*, 235 F.3d 804, 811 (2d Cir. 2000) (citing *United States v. Soto*, 716 F.2d 989, 991 (2d Cir. 1983)). Indeed, a federal court may overturn a state court decision rejecting a sufficiency-of-the-evidence claim only if the state court decision was "objectively unreasonable." *Coleman v. Johnson*, 566 U.S. 650, 651 (2012) (per curiam) (citation omitted). Moreover, the "court[] must look to state law for 'the substantive elements of the criminal offense.'" *Id.* at 655 (citation omitted).

Under New York law, a person is guilty of first-degree rape if "he or she engages in vaginal sexual contact with another person . . . [b]y forcible compulsion." N.Y. Penal Law § 130.35(1)(a). "'Forcible compulsion' means to compel by either . . . use of physical force[] or . . . a threat, express or implied, which places a person in fear of immediate death or physical injury to himself, herself or another person . . . ." *Id.* §130.00(8). A person is guilty of second-degree assault if "[i]n the course of and in furtherance of the commission or attempted commission of a felony . . . he . . . causes

physical injury to a person . . . ." *Id.* § 120.05(6).  Both first-degree rape and first-degree

sexual abuse are felonies.  *Id.* §§ 130.35, 130.65.  Finally, a person is guilty of first-degree

sexual abuse if "he or she subjects another person to sexual contact . . . [b]y forcible

compulsion."  *Id.* § 130.65(1).

       Here, the evidence at trial, taken together and viewed in the light most

favorable to the prosecution, was legally sufficient to support Dixon's guilt of all three

crimes.  C.R. testified in detail about how Dixon choked her and then inserted his penis

in her vagina.  *See* Dkt. 75-12 at 53-54.  Moreover, testing confirmed that Dixon's DNA

matched the DNA from the semen and saliva taken from C.R.'s vagina.  *See People v.

Rush*, 672 N.Y.S.2d 362, 363-64 (2d Dep't 1998) (concluding that, where a defendant's

DNA "matched the DNA in a semen sample recovered from the victim," that DNA

match "provided 'strong evidence' of the defendant's participation in the rape").  That

evidence supports Dixon's first-degree rape and sexual abuse convictions.

       Indeed, Dixon testified that he had sex with C.R.; he simply claimed that

the sex was not forcible because it was in exchange for money.  Even assuming this is a

permissible conflicting inference based on the evidence in the record, this Court "must

presume -- even if it does not affirmatively appear in the record -- that the trier of fact

resolved any such conflicts in favor of the prosecution[] and must defer to that

resolution."  *Jackson*, 443 U.S. at 326.

Moreover, Dixon's assertion that the sex was not forcible is belied by the evidence of the use of force -- the medical evidence as well as C.R.'s testimony.  C.R. testified that she did not consent to sex with Dixon, Dixon forced himself on her, and his actions bruised her neck and made it bleed.  Dkt. 75-12 at 53-54.  Officer Miller noticed C.R.'s visible neck injuries and Davis, the emergency medical physician's assistant who examined C.R., testified about the scratch marks on C.R.'s neck and back, petechia, and hemorrhaging in her right eye.  *Id.* at 56.  Because both first-degree rape and sexual assault are felonies, the testimony about C.R.'s physical injuries supports Dixon's conviction for second-degree assault.

Dixon attacks the credibility of the witnesses at trial.  But resolving the credibility of witnesses is not the role for this Court: when considering a petition based on the sufficiency of evidence to support a state criminal conviction, courts defer to the *jury's* assessment of witness credibility.  *See Maldonado*, 86 F.3d at 35.  Accordingly, habeas relief is unavailable for Dixon's sufficiency of the evidence claim.

**b.      *Prosecutorial Misconduct***

Nor is Dixon entitled to habeas relief on his claim that the People engaged in prosecutorial misconduct during trial.  Dixon contends that

> [t]he prosecution fraudulently concealed and
> misrepresented the initial felony complaint and totally
> impaired the integrity of the Grand Jury, barring petitioner
> from process, nullifying the vote, voiding the indictment in
> jurisdictional defects.  Additionally, the prosecution
> subordination of perjury, the altering, falsifying and

20

> manufactured police and medical reports and other
> documents, with Brady and Rosario violations and the
> suppression of photos, phone and other record.  Also,
> improper comments during summations.

*See* Dkt. 1 at 4.

Dixon raised prosecutorial misconduct claims on several grounds before the trial court in his Section 440.10 motion, including claims resembling the ones raised in his Petition.  *See* Dkt. 75-5 at 37-41 (construing Dixon's claims to include, as relevant here: "the prosecutor presented fabricated oral statements and forged documents known to be false," "prosecutorial misconduct occurred by the People's failure to preserve and record . . . 'opthalmologist [sic] reports, money and earrings,'" "the prosecutor committed a *Rosario* and *Brady* violation," and "the prosecutor . . . excessively used the word, 'liar' throughout his summation").  The trial court concluded that "all of [Dixon's] claims of prosecutorial misconduct are barred from this Court's review," citing CPL § 440.10(2)(b).  *Id.* at 50-51; *see also id.* at 47 (explaining that CPL § 440.10(2)(b) precludes relief where "[Dixon] has filed an appeal, and almost all of [Dixon's] claims raised in his" Section 440.10 motions "appear to be on the record and, therefore, could be reviewed on direct appeal, and defendant's appeal is still pending.").

As with his sufficiency of the evidence claim discussed above, habeas relief is similarly not available to Dixon for his prosecutorial misconduct claim.  For an independent and adequate state ground to bar habeas relief, the state court rendering the judgment must "clearly and expressly state that its judgment rests upon a state

procedural bar." *Whitley*, 642 F.3d at 286 (2d Cir. 2011) (quoting *Glenn*, 98 F.3d at 724).

"NYCPL § 440.10(2)(b) constitutes just such an independent and adequate state

procedural rule that operates to bar federal habeas relief." *Totesau v. Lee*, No. 19-CV-

6992 (PKC), 2022 WL 1666895, at *18 (E.D.N.Y. May 25, 2022) (collecting cases), *aff'd*,

2023 WL 8253683 (2d Cir. Nov. 29, 2023) (summary order).  Here, the Section 440.10

court clearly and expressly stated that Dixon's "claims of prosecutorial misconduct are

barred" from review, citing CPL § 440.10(2)(b).  Dkt. 75-5 at 50-51.

Dixon has also failed to demonstrate that he is entitled to an exception to

the procedural default rule, because he has not shown either (1) cause and actual

prejudice or (2) that a fundamental miscarriage of justice would occur if the merits of

the federal claim were not considered.  *See Edwards*, 529 U.S. at 451; *Coleman*, 501 U.S. at

748; *Carvajal*, 633 F.3d at 104.

The prosecutorial misconduct claim fails on the merits anyway.  In

general, "a criminal conviction is not to be lightly overturned on the basis of a

prosecutor's comments standing alone . . . in an otherwise fair proceeding." *United

States v. Young*, 470 U.S. 1, 11 (1985).  "[I]t 'is not enough that the prosecutors' remarks

were undesirable or even universally condemned.'" *Darden v. Wainwright*, 477 U.S. 168,

181 (1986) (citation omitted).  "In order to reach the level of a constitutional violation, a

prosecutor's remarks must 'so infect the trial with unfairness as to make the resulting

conviction a denial of due process.'" *Gonzalez v. Sullivan*, 934 F.2d 419, 424 (2d Cir. 1991)

(alteration adopted) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)).

"Whether a prosecutor's improper remarks result in a denial of due process depends upon whether the remarks caused 'substantial prejudice' to the defendant." *United States v. Tutino*, 883 F.2d 1125, 1136 (2d Cir. 1989) (quoting *United States v. Nersesian*, 824 F.2d 1294, 1327 (2d Cir. 1987)).  To determine whether "substantial prejudice" exists, the Second Circuit has "adopted a contextual approach that considers the following factors: 'the severity of the misconduct; the measures adopted to cure the misconduct; and the certainty of conviction absent the improper statements.'" *Id.* (quoting *United States v. Biasucci*, 786 F.2d 504, 514 (2d Cir. 1986)); *see also Gonzalez*, 943 F.2d at 424 (same).

In the Petition, Dixon does not clearly specify what was "improper" about the prosecutor's comments during summation.  Dkt. 1 at 4.  The prosecutor acknowledged that C.R.'s testimony and Dixon's testimony offered "two versions" of a story that "are certainly conflicting.  Someone took the stand and lied.  Who are you going to believe?"  Dkt. 75-25 at 19.  The prosecutor further said, "No one in this case, no one, has a greater motive to distort the truth than [Dixon]." *Id.* at 20.  Finally, the prosecutor noted that Dixon admitted to smoking cocaine and drinking alcohol before driving, while "C.R. . . . never had any trouble with the law."  After Dixon's counsel objected to the comment about C.R.'s criminal history, the trial court sustained the comment. *Id.* at 21.

In sum, the prosecutor's comments were largely responsive to defense counsel's summation that sought to persuade the jury to believe Dixon's version of events, rather than C.R.'s version.  *See* Dkt. 75-24 at 140 ("She was doing what she was doing because something pretty sad drove her to this pretty desperate situation.  She is hardened and has been doing this for months or weeks."); *id.* at 146 ("I submit, what happened here is, as unpleasant as it was, was sex for money.").  The prosecutor's comments thus fall within the bounds of acceptable argument during summation.  *See Cooper v. Costello*, 112 F.3d 503 (2d Cir. 1997) (affirming the denial of a habeas petition on prosecutorial misconduct grounds where "the prosecutor was merely responding to the content of defense counsel's summation, which had attacked the credibility of the same witness"); *People v. Gillespie*, 831 N.Y.S.2d 83, 84 (2d Dep't 2007) (no prosecutorial misconduct where "most of the challenged remarks were fair comment on the evidence, permissible rhetorical comment, or responsive to the defense counsel's summation").  The prosecutor's comments did not deprive Dixon of a fair trial.

Moreover, Dixon does not explain how the prosecutor fraudulently concealed or misrepresented the felony complaint, engaged in perjury, or falsified reports, and he does not provide any detail about the *Brady* and *Rosario* violations.  *See* Dkt. 1 at 4; Dkt. 82 at 21-22 (stating that "the judgment was procured by misrepresentation or fraud on part of the prosecutor or court" and "false evidence was presented at trial, known by the prosecutor to be false").  These allegations, without

more, are far too conclusory to provide a basis for habeas relief.  *See Skeete v. New York*,

No. 1:03-CV-2903, 2003 WL 22709079, at *2 (E.D.N.Y. Nov. 17, 2003) ("[V]ague,

conclusory and unsupported claims do not advance a viable claim for habeas corpus

relief.").  Accordingly, this claim provides no basis for relief.

> **c.**      ***Ineffective Assistance of Counsel***

Nor is Dixon entitled to habeas relief on his claim that he received

ineffective assistance of counsel.  Dixon claims:

> Counsel committed fraud, falsely claiming defendant was
> present when indictment was filed, undermining
> Constitutional and Statutory rights under Art 190, and to
> counsel at every critical stage; failing to confer any plea
> offers; negating to review Rosario and Brady material and to
> demand full discovery of all police and medical reports,
> phone records, and effectively and properly used them.
> Counsel took an adverse position against defendant in
> opening and closing statements and regarding contentions
> to be or raised in motions and appeal.  Counsel provided
> deficient performance in cross-examining witnesses and
> refused to hold the prosecution to adversarial test or to
> protest the ex parte communication between the ADA and
> Judge or to inquire into the missing documents and to obtain
> an expert.  Also, counsel's conflicting examination of
> defendant, extracting damaging evidence and conceding
> guilt against defendant's claims of innocence and accusing
> him of uncharged crimes.

Dkt. 1 at 5.

It appears that Dixon raised essentially these grounds for ineffective

assistance of counsel before the trial court in his Section 440.10 motion.  *See* Dkt. 75-5 at

38, 40 (listing Dixon's claims about counsel, including "trial counsel failed to relay a plea

offer," "trial counsel improperly permitted false testimony to go uncorrected and waived defendant's right to be present during that instance," "trial counsel made an improper summation," "trial counsel failed to demand discovery, *Brady* and *Rosario* materials," "trial counsel failed to point out inconsistencies between the People's witnesses' testimony and police paperwork," and "trial counsel gave a damaging summation, indicating that defendant's behavior was not justified").  The trial court concluded that Dixon's claims were "barred from this Court's review."  *Id.* at 48-49.; *see also id.* at 45 (concluding that of the claims in Dixon's papers that the court could "discern," including those of ineffective assistance, they were "not cognizable under CPL 440.10.").[2]

As with his sufficiency of the evidence and prosecutorial misconduct claims discussed above, habeas relief is similarly not available to Dixon for his ineffective assistance of counsel claim.  For an independent and adequate state ground

---

[2]    Dixon also raised ineffective assistance of counsel on several grounds in his *pro se* supplemental brief in the Appellate Division on direct appeal.  *See* Dkt. 75-14 at 6-18.  The Appellate Division concluded that his contention "is based, in part, on matter appeared on the record and, in part, on matter outside the record, and thus constitutes a 'mixed claim' of ineffective assistance."  *Dixon I,* 138 A.D.3d at 1017.  The Appellate Division further concluded that "[i]n this case, it is not evident from the matter appearing on the record that the defendant was deprived of the effective assistance of counsel."  *Id.*  The court further directed Dixon to pursue his claims based on matter outside the record in a Section 440.10 proceeding, *id.*, though, as detailed above, Dixon's Section 440.10 proceeding had already concluded by that time.  As Dixon does not appear to have filed another 440.10 motion based on the record before this Court, any ineffective assistance of counsel claims raised only on direct appeal (and not in the Section 440.10 motion) are therefore unexhausted.  *See Murray v. Cunningham,* No. 19-CV-767 (DC), 2023 WL 4665761, at *7 (E.D.N.Y. July 20, 2023).  For the reasons described here, however, even Dixon's arguably unexhausted claims can be denied because they are plainly meritless.

to bar habeas relief, the state court rendering the judgment must "clearly and expressly state that its judgment rests upon a state procedural bar." *Whitley*, 642 F.3d at 286 (quoting *Glenn*, 98 F.3d at 724).  Here, the Section 440.10 court clearly and expressly stated that his claims of ineffective assistance of counsel were "barred from this Court's review."  Dkt. 75-5 at 48-49; *see also id.* at 45 (citing Section 440.10).

Dixon has also failed to demonstrate that he is entitled to an exception to the procedural default rule, because he has not shown either (1) cause and actual prejudice or (2) that a fundamental miscarriage of justice would occur if the merits of the federal claim were not considered.  *See Edwards*, 529 U.S. at 451; *Coleman*, 501 U.S. at 748; *Carvajal*, 633 F.3d at 104.

Moreover, to the extent that some of Dixon's claims are arguably unexhausted, they must be denied because they are plainly meritless.  *See Ortiz*, 2011 WL 1331509, at *14.  In general, to prevail on a claim of ineffective assistance under federal law, a petitioner must (1) show that counsel's performance was so deficient as to fall below "an objective standard of reasonableness"; and (2) establish prejudice by demonstrating a "reasonable probability" that, "but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Strickland v. Washington*, 466 U.S. 668, 688, 694 (1984).  In the context of a habeas petition under 28 U.S.C. § 2254, "[e]stablishing that a state court's application of *Strickland* was unreasonable . . . is all the more difficult.  The standards created by *Strickland* and § 2254(d) are both 'highly

27

deferential,' . . . and when the two apply in tandem, review is 'doubly' so." *Harrington*, 562 U.S. at 105 (collecting cases).  Therefore, "[t]he operative question" when a federal court reviews a state court's ineffective assistance of counsel ruling is "not whether [the] federal court believes the state court's determination was incorrect, but rather whether that determination was objectively unreasonable . . . ." *Waiters*, 857 F.3d at 478 (alterations adopted) (quoting *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007)).

The standard for establishing an ineffective assistance of counsel claim under New York law is lower than under federal law.  *See People v. Honghirun*, 78 N.E.3d 804, 807 (N.Y. 2017).  In New York, a defendant must show only "that counsel failed to provide meaningful representation . . . ." *People v. Alvarez*, 125 N.E.3d 117, 120 (N.Y. 2019) (citing *People v. Stultz*, 810 N.E.2d 883 (N.Y. 2004); *People v. Baldi*, 429 N.E.2d 400 (N.Y. 1981)).  Unlike the federal standard, *see Strickland*, 466 U.S. at 694, under the state standard, the defendant is not required to demonstrate that he was prejudiced by the ineffective assistance.  *See Alvarez*, 125 N.E.3d at 120.

The trial record shows that Dixon received effective assistance of counsel. Some of Dixon's claims appear to relate to his trial attorney's comments about him during summation.  *See* Dkt. 1 at 5 (explaining that his lawyer "took an adverse position against [him] in opening and closing statements" and "conceding guilt against defendant's claims of innocence and accusing him of uncharged crimes").

28

For example, Dixon's trial counsel opened his summation by saying, "I give it to you.  He is a piece of work."  Dkt. 75-24 at 138.  The comments were a reaction to Dixon's testimony; his lawyer noted that during Dixon's testimony "[s]ome people were holding back laughter at certain points; others looking away from him.  A little bit of repulsion."  *Id.* at 139.  Counsel was attempting persuade the jury that, despite Dixon's testimony -- "[t]here were things he said that were plain distasteful" -- C.R. was a prostitute and not a victim of rape.  *See id.* at 139.  This fit with counsel's trial strategy from the start, which appeared to be that C.R. was a prostitute who consented to sex with Dixon for money.  *See* Dkt. 75-22 at 60 (stating in his opening that "Dixon had a sexual encounter with this lady accusing him" and that "money was offered to this woman").  "Actions or omissions by counsel that might be considered sound trial strategy do not constitute ineffective assistance."  *United States v. Best*, 219 F.3d 192, 201 (2d Cir. 2000) (internal quotation marks and citation omitted).  Moreover, Dixon's other allegations are, without more, are far too conclusory to provide a basis for habeas relief.  *See Skeete*, 2003 WL 22709079, at *2 ("[V]ague, conclusory and unsupported claims do not advance a viable claim for habeas corpus relief.").  Accordingly, Dixon is not entitled to relief on this claim.

### d.   The Trial Court's Conduct

Nor is Dixon entitled to habeas relief on his claim about the trial court's conduct.  He contends:

> The [judicial hearing officer] improperly sustained the
> prosecution's objection at pretrial hearing, about
> complainant's prior statements.  The Trial Judge had an ex
> parte communication with the prosecutor and made an
> improper good faith determination, giving a conscionable
> advantage to the prosecution and relied on information
> outside the four corners of the evidence and record.  The
> court allowed the prosecution to withhold prior statements
> in the UF61 from petitioner and other missing documents.
> The Court prohibited cross-examining the accuser
> concerning place of residence; and was partial in
> marshalling the evidence in favor of the prosecution;
> allowed physician assistant to testify to injury, disputed by
> MD and an undisclosed Ophthalmologist report, while
> claiming her testimony to be facts.  The judge interrupted
> the cross examination of lead investigating detective and
> gave an erroneous instructions sua sponte allowing detective
> to falsify his report and denying accuser's recantation.  Also,
> the judge pronounced against defendant stating "anything is
> possible" preventing defendant from explaining what
> happen in support of his innocence, after allowing the
> prosecution to ask in its own witnesses the very same type of
> questioning.  The Judge unfair bias refused to give the
> missing witness instruction.  Also, abuse in refusing recusal
> and in denying motions.

Dkt. 1 at 6.

Dixon raised these claims before the Appellate Division.  *See* Dkt. 75-14 at

19-24.  The Appellate Division concluded that they were "unpreserved for appellate

review and, in any event, without merit."  *Dixon I*, 138 A.D.3d at 1017.

As with Dixon's other claims discussed above, habeas relief is similarly

not available to Dixon for his claim about the trial court's conduct.  The Appellate

Division "clearly and expressly" stated, *Whitley*, 642 F.3d at 286, that his claims were

30

"unpreserved for appellate review," *Dixon I*, 138 A.D.3d at 1017.  Dixon has also failed to

demonstrate that he is entitled to an exception to the procedural default rule, because he

has not shown either (1) cause and actual prejudice or (2) that a fundamental

miscarriage of justice would occur if the merits of the federal claim were not considered.

*See Edwards*, 529 U.S. at 451; *Coleman*, 501 U.S. at 748; *Carvajal*, 633 F.3d at 104.

   In any event, Dixon's claim fails on the merits.  To the extent that Dixon's

claims are based on state evidentiary rulings, "state trial court evidentiary rulings

generally are not a basis for habeas relief."  *Vega*, 669 F.3d at; *see also Crane v. Kentucky*,

476 U.S. 683, 689 (1986) ("We acknowledge also our traditional reluctance to impose

constitutional constraints on ordinary evidentiary rulings by state trial courts.").

Instead, for erroneous rulings, "the writ [of habeas corpus] would issue only where

petitioner can show that the error deprived her of a fundamentally fair trial."  *Taylor v.

Curry*, 708 F.2d 886, 891 (2d Cir. 1983).  But even assuming the trial court ruled

erroneously by, for example, allowing the "physician assistant to testify to injury," Dkt.

1 at 6, Dixon has not shown -- and cannot show -- that he was deprived of a

fundamentally fair trial.  As described above, the testimony at trial, corroborated by

medical evidence, was sufficient to support Dixon's convictions for first-degree rape,

second-degree assault, and first-degree sexual abuse.  Moreover, Dixon's other

allegations are, without more, are far too conclusory to provide a basis for habeas relief.

*See Skeete*, 2003 WL 22709079, at *2 ("[V]ague, conclusory and unsupported claims do

31

not advance a viable claim for habeas corpus relief.").  Accordingly, Dixon is not

entitled to relief on this claim.

## CONCLUSION

Dixon has failed to show any basis for relief under 28 U.S.C. § 2254.

Accordingly, the Petition is denied.  Additionally, I decline to issue a certificate of

appealability because Dixon has not made a substantial showing of the denial of a

constitutional right.  *See* 28 U.S.C. § 2253(c)(2).  Pursuant to 28 U.S.C. § 1915(a)(3), I

certify that any appeal taken from this decision and order would not be taken in good

faith.

The Clerk of Court is respectfully directed to mail a copy of this

memorandum decision and the judgment to Dixon at his last address of record.

SO ORDERED.

Dated:      New York, New York
            September 9, 2024

_____
DENNY CHIN
United States Circuit Judge
Sitting By Designation